No. 25-10507

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Douglas Deno, as Owner of the M/V 1999 Carver 406 Aft Cabin
*Petitioner - Appellant*

v.

Progressive Casualty Insurance Company and Progressive Advanced Insurance
Company as Subrogees of Paul Stewart and Ed Hinson; Starstone Specialty
Insurance Company, as Subrogee of Waterview Management Group, LLC dba
Waterview Marinas; Axis Surplus Insurance Company, as Subrogee of Waterview
Management Group, LLC dba Waterview Marinas; and Ironshore Specialty
Insurance Company, as Subrogee of Waterview Management Group, LLC dba
Waterview Marinas and Ace American Insurance Company as Subrogee as
Subrogee of Michael Saul
*Defendants/Claimants - Appellees*

ON APPEAL FROM
the United States District Court for the Northern District of Texas,
Fort Worth Division
No. 4:24-cv-1094-P

BRIEF OF APPELLANT

WILLIAM TRACY FREEMAN
Federal Bar No. 19588
Texas Bar No.00793757
Segal McCambridge Singer & Mahoney, Ltd.
100 Congress Avenue, Suite 800
Austin, Texas 78701
Telephone: (512) 476-7834

Email: tfreeman@smsm.com
-and-
HOPE ZIMLICH MIRANDA
Texas Bar No. 24084146
Thompson Coe
700 North Pearl Street
Dallas, Texas 75201
Telephone: (214) 871-8200
Email: hmiranda@thompsoncoe.com
*Attorneys for Appellant Douglas Deno, as*
*Owner of the M/V 1999 Carver 406 Aft Cabin*

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Progressive Casualty Insurance Company and Progressive Advanced Insurance Company, as Subrogees of Paul Stewart and Ed Hinson | Randall L. Poelma, Jr. \| Doyen Sebesta & Poelma, Ltd, LLP<br>William D. Mahone \| Botler Mahoney & Gray LLP |
| Ace American Insurance Company, as Subrogee of Michael Saul | Joshua L. Weems \| Cozen O'Connor Yost & Bail, LLP |
| Starstone Specialty Insurance Company, as Subrogee of Waterview Management Group, LLC dba Waterview Marinas; Axis Surplus Insurance Company, as Subrogee of Waterview Management Group, LLC dba Waterview Marinas; and Ironshore Specialty Insurance Company, as Subrogee of Waterview Management | Hobart M. Hind and Hannah Conrady \| Butler Weihmuller Katz Craig, LLP |

| | |
|---|---|
| Group, LLC dba Waterview Marinas (collectively "Certain Property Insurers") | |

| Appellant: | Counsel for Appellant: |
|---|---|
| Douglas Deno, as Owner of the M/V1999 Carver 406 Aft Cabin ("Deno") | William Tracy Freeman \| Singer McCambridge Segal & Mahoney, Ltd. Hope Zimlich Miranda \| Thompson Coe |

/s/ William Tracy Freeman

_____

William Tracy Freeman
Attorney for Appellant Douglas Deno

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal involves the navigability of Grapevine Lake in the context of a Complaint for Exoneration from of Limitation of Liability ("LOLA") and the District Court's dismissal under Federal Rule 12(b)(1), Deno believes oral argument may be necessary to aid the Court's decisional process.

# TABLE OF CONTENTS

Certificate of Interested Persons ..................................................................... ii
Statement Regarding Oral Argument ................................................................ iii
Table of Contents………………………………………………………………..iv
Table of Authorities……………………………………………………………..iv
Jurisdictional Statement ...................................................................................1
Statement of the Issues......................................................................................1
Statement of the Case……………………………………………………………2
Summary of The Argument .............................................................................4
Argument...........................................................................................................6
   A.  12(b)(1) Standard................................................................................6
   B.  The District Court erred when it dismissed the LOLA under Federal Rule 12(b)(1) by concluding that Grapevine Lake did not qualify as a "navigable waterway" without permitting the parties to conduct jurisdictional discovery, including information and materials from the U.S. Army Corps of Engineers and the Environmental Protection Agency, the latter of which stipulated in a Consent Agreement that Grapevine Lake is a navigable waterway, ................8

   C.  The District Court erred under Rule 12(b)(1) when it failed to properly consider the sworn testimony of a marine expert who opined that "Grapevine Lake, in its actual and potential uses (past, present and future) is a navigable waterway in fact." …………………………………………………………..12

Conclusion and Request for Relief .......................................................................21
Certiicate of Service .......................................................................................22
Certificate of Compliance .................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Raft of Logs* , 709 F.3d 1055 (11th Cir. 2013)…………………………………………………………………11

*Bittakis v. City of El Paso,* 480 F. Supp. 2d 895 (W.D. Tex. 2007)…………………7

*Baltimore Gas & Elec. Co. v. Coastline Commer. Contr., Inc.,* 107 F.4th 264 (4th Cir. 2024)………………………………………………………………………..10

*Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 St. Ct. 99 (1957)……….6

*Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015)…………………………………………6

*Economy Light & Power Co. v. United States,* 256 U.S. 113 (1921)………….16, 19

*Garcia v. Copenhaver, Bell & Assoc.,* 104 F3d 1256 (11th Cir. 1997)……………..7

*George v. Beavark, Inc.,* 402 F.2d 977 (8th Cir. 1968)……………………………19

*Guillory v. Outboard Motor Corp.,* F.2d 114 (5th Cir. 1992)……………………..17

*Hardwick v. Pro-Line Boats,* 895 F.Supp. 145 (S.D. Tex. 1995)…………………18

*Hassinger v. Tideland Elec. Membership Corp.*, 781 F.2d 1023 (4th Cir. 1986)….12

*Hobbs v. Hawkins,* 968 F.2d 471, 475 (5th Cir. 1992)……………………………..7

*Home Builders Ass'n of Mississippi, Inc.,* 143 F.3d 1006, 1010 (5th Cir. 1998)……………………………………………………………………………7, 19

*In Re Complaint of Gio Rio San Antonio, LLC,* No SA-20-CV-1304-KJP, 2021 U.S. Dist. LEXIS 109617, *4, 10-11 (W.D. Tex. June 11, 2021)………………………..9

*In Re Eckstein Marine Serv.,* 672 F.3d 310, 319 (5th Cir. 2012)………………..7, 9

*Madole v. Johnson,* 241 F. Supp. 379, 382 (E.D. La. May 25, 1965)……………16

*Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 602 n.1 (5th Cir. 1981)………7

*Mullenix v. United States*, 984 F.2d 101 (4th Cir. 1993)…………………………11

*Paterson v. Weinberger,* 644 F2d 521, 523 (5th Cir. 1981)………………………20

*Price v. Price*, 929 F.2d 131 (4th Cir. 1991)…………………………………………11

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (quoting *Conley v. Gibson*, 335 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78, S. Ct. 99 (1957))…………………………………………………………………………6-7

*Reese v. Wells Fargo Bank,* NA, No. 3:23-cv-524-N-BN, 2024 U.S. Dist. LEXIS 152771, *8 (N.D. Tex. Aug 5, 2024)……………………………………………9

*Sanders v. Placid Oil Co.,* 861 F.2d 1374 (5th Cir. 1988)…………………………18

*Saraw Partnership v. United States,* 67 F.3d 567, 569 (5th Cir. 161)………………6

*Sisson v. Ruby,* 497 U.S. 358 (1991)………………………………………………19

*T.B. v. NW. Indep. Sch. Dist.,* 980 F3.d 1047, 1050 (5th Cir. 2020)………………6

*The Daniel Ball,* 77 U.S. 557, 563 (1870)………………………………………..16, 19

*Thibodeaux v. Bernhard,* No. 23-30405, 2024 U.S. App. LEXIS 15539*15-16 (5th Cir. June 26, 2024)………………………………………………………………..18

*Timpy Ondrusek, et al. v. United States Army Corp of Engineers, et al*, Civil Action No. 3:22-cv-01874-N …………………………………………………………..10

*United States v. Appalachian Elec. Power Co.,* 311 U.S. 377, 408, 61 S. Ct. 291, 85 L. Ed. 243 (1940)…………………………………………………………………19

*Utah v. United States*, 403 U.S. 9 1971)………………………………………..20

*Viquiera v. First Bank*, 140 F.3d, 15, 15 (1st Cir. 2012)……………………………6

*Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981)………………………….7

*Zephyr Aviation, LLC v. Dailey*, 547 F.3d 565, 570 (5th Cir. 2001)………………..6

**Statutes**
TITLE 33 NAVIGATION AND NAVIGABLE WATERS……………………..4, 13, 15-16
U.S.C §§ 3051, et seq……………………………………………………………1
28 U.S.C. § 1333…………………………………………………………………2

**Rules**
FED R. CIV. P. RULE F……………………………………………………………1,2
FED. R. CIV. P. 12(b)(1)…………………………………...…… iii, 1, 3-9, 12-13, 19
FED. R. CIV. P. RULE 3………………………………………………………………1
FED. R. CIV. P. RULE 9(H)…………………………………………………………1-2
FED. R. CIV. P. 46………………………………………………………………………1
25 TEX. REGULATION (JUNE 16, 2000)………………………………………..17
33CFR § 329.3…………………………………………………………………...8

33 CFR § 329.4…………………………………………………………5, 15-16

33 CFR § 329.8(b)……………………………………………………………15

33 CFR § 329.9(a)……………………………………………………………15

33 CFR § 329.9(b)……………………………………………………………16

33 CFR § 329.14(a)…………………………………………………………...8

33 CFR § 329.16(b)…………………………………………………………...9

40 CFR §§ 112.2……………………………………………………………2, 4

40 CFR § 120.2………………………………………………………………13

**Other**

Docket No. CWA-06-2021-4803, *In the Matter of Federal Express Corporation, Fed Ex Alliance Hub*, Tarrant County, Texas, United States Environmental Protection Agency, Region 6, CWA Section 311…………………………………………………………………....2

# JURISDICTIONAL STATEMENT

Deno appeals a Final Judgment from the United States District Court for the Northern District of Texas, Fort Worth Division. The District Court had jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure, 46 U.S.C. §§ 3051, et seq, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. This Court has jurisdiction under the aforementioned Rule and Statute as well as Rule 3 of the Federal Rules of Civil Procedure because it is an appeal from a Final Judgment.

The District Court issued a Memorandum Opinion & Order ROA.329-337 and Final Judgment on March 12, 2025. ROA.338. Deno filed his Notice of Appeal on April 9, 2025. ROA.339-340. Accordingly, this appeal is timely.

# STATEMENT OF THE ISSUES

Issue 1:    Did the District Court fail to follow the Fifth Circuit's required analysis for resolving disputed facts when it dismissed the LOLA under Rule 12(b)(1) of the Federal Rules of Civil Procedure?

Issue 2:    Did the District Court err when it dismissed the LOLA under Federal Rule 12(b)(1) by concluding that Grapevine Lake did not qualify as a "navigable waterway" without permitting the parties to conduct jurisdictional discovery, including information and materials from the U.S. Army Corps of Engineers and the Environmental Protection Agency, the latter of which stipulated in a Consent Agreement that Grapevine Lake is a navigable waterway?

Issue 3:    Did the District Court err under Rule 12(b)(1) when it failed to consider the sworn testimony of a marine expert who opined that "Grapevine Lake, in its actual and potential uses (past, present

and future) is a navigable waterway in fact"?

## STATEMENT OF THE CASE

Deno was the owner of a recreational vessel that was docked at Silver Lake Marina on Grapevine Lake. ROA.9-10. On or about October 13, 2024, the vessel caught fire and afterwards there was an explosion, resulting in the destruction of his vessel, damage to other boats in the vicinity and damage to the marina. ROA.11-12.

Because the incident occurred without his privity or knowledge and happened on a navigable waterway, Deno, as is his right, filed a LOLA (and accompanying items) on November 7, 2024 pursuant to 28 U.S.C. § 1333, Rule 9(h) of the Federal Rules of Civil Procedure and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. ROA.9-35.[1] Further, according to the Texas Water Development Board, Grapevine Lake is in north Grapevine near the border between Denton County and Tarrant County, on Denton Creek, a tributary of the Elm Fork of the Trinity River, a navigable waterway. ROA.10.

On December 6, 2024, the District Court signed three separate orders and issued a Monition. ROA.44-54.

---

[1] In the LOLA Complaint, Deno referred to a Consent Agreement and Final Order Docket No. CWA-06-2021-4803, *In the Matter of Federal Express Corporation / FedEx Alliance Hub / Tarrant County*, Texas, United States Environmental Protection Agency, Region 6, CWA Section 311 wherein the Director of Enforcement and Compliance Assurance Division issued a Final Order stipulating, among other things, that "Grapevine Lake is a navigable water of the United States within the meaning of 40 CFR § 112.2." *See* ¶ 9 of said Final Order; *see also* 40 CFR § 112.2. ROA.9-10.

Prior to an Initial Scheduling Conference, Joint Discovery Case Management Plan or any discovery, Appellees filed separate Motions to Dismiss under Rule 12(b)(1). ROA.55-74, 91-110, 131-141, 201-205. Deno filed separate Responses to the Motions to Dismiss and in support included an affidavit and detailed annotated written report from a marine expert who testified, among other things, that Grapevine Lake is a navigable waterway according to the definition of navigable waters for maritime jurisdiction. ROA.206-262, 263-320.

Notably, in his Response, Deno stated he had requested, via the Freedom of Information Act ("FOIA"), materials from the EPA concerning its determination that Grapevine Lake was a navigable waterway and that he had not yet received the materials. ROA.209, 266. Deno has since issued an amended FOIA request to the EPA.

The District Court granted the Motions to Dismiss and entered a Final Judgment. ROA.329-338.

Since then, Deno, via FOIA, has obtained records from the U.S. Army Corps of Engineers regarding "information and materials pertaining to the dam at Grapevine Lake, namely, its capability and actual instances in which it released water into the Trinity River within the past three years." Deno received a response totaling 324 pages.[2]

---

[2] These records are not part of the record because they were received after the case was dismissed.

3

## SUMMARY OF THE ARGUMENT

The District Court erred when it dismissed the LOLA under Federal Rule 12(b)(1) without applying the Fifth Circuit's required analysis in resolving disputed facts.

The District Court erred when it dismissed the LOLA under Federal Rule 12(b)(1) by concluding that Grapevine Lake did not qualify as a "navigable waterway" without permitting the parties to conduct jurisdictional discovery, including acquisition of information and materials from the U.S. Army Corps of Engineers and the Environmental Protection Agency, the latter of which stipulated in a Consent Agreement that Grapevine Lake is a navigable waterway. Deno should be permitted to direct a deposition by written questions to the EPA for information and materials in support of the Consent Agreement that "Grapevine Lake is a navigable waterway of the United States within the meaning of 40 CFR § 112.2." See Ex. 1, at ¶ 9. ROA.219, 277.

Title 33 of the Code of Federal Regulations, which is titled Navigation and Navigable Waters, states: "Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have

---

According to a USACE Water Control Manual, dated September 2018,"Grapevine Dam and Lake are a multi-purpose project used for flood control, water supply [and] navigation…[and] operates with two other USACE dams (Ray Roberts Dam and Lewisville Dam) to provide flood control to the lower Elm Fork Trinity River system and the mainstem of the Trinity River."

been used in the past, or may be susceptible for use to transport interstate or foreign commerce. 33 C.F.R. § 329.4. "A determination of navigability…is not extinguished by later actions or events which impede or destroy navigable capacity." *Id.*

The analysis regarding subject matter jurisdiction centers on the issue of whether Grapevine Lake is a navigable waterway, and Deno has presented evidence that, at the very least, raises a fact issue sufficient to justify the ability to conduct additional discovery prior to a definitive finding on the subject of navigability. The determination of admiralty/maritime jurisdiction is a fact intensive exercise requiring much testimony on commerce, hydrology, historical average high-water data, on-the-ground observations of activity, historical and current maps, among other things. It is not suited for a summary proceeding without the opportunity for and conducting of discovery or an evidentiary hearing.

The District Court erred under Rule 12(b)(1) when it failed to properly consider the sworn testimony of a marine expert who opined that "Grapevine Lake, in its actual and potential uses (past, present and future) is a navigable waterway in fact" and provided, in support of that testimony, a detailed annotated report. Deno met his burden for purposes of establishing the navigability of Grapevine Lake and the fire and explosion's disruptive impact on maritime activity, making it clear, or at the very least, presenting a set of facts that support a finding, that the District

Court did have subject matter jurisdiction. The District Court's dismissal, despite Deno establishing that subject matter jurisdiction, was improper.

## ARGUMENT

### A.    Applicable Standards for Required Analysis

The Court reviews a district court's dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) de novo, applying the same standards as the district court. *Zephyr Aviation, LLC v. Dailey*, 247 F.3d 565, 570 (5th Cir. 2001); *T.B. v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1050 (5th Cir. 2020).

In determining whether the court has subject matter jurisdiction, a court must accept the allegations set forth in the complaint as true. *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). The appellate court "accept[s] as true the complaint's well-pleaded factual allegations, excluding, however, bald conclusions, unrelieved rhetoric, and pejorative epithets." *Viqueira v. First Bank*, 140 F.3d 12, 15 (1st Cir. 1998).

Although a district court is permitted to consider facts in dispute, "a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears *certain* that the plaintiff cannot prove *any set of facts* in support of his claim that would entitle plaintiff to relief." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) *(*quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)); see also *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir.

1995); *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992); *Bittakis v. City of El Paso*, 480 F. Supp. 2d 895, 907 (W.D. Tex. 2007) ("A Rule 12(b)(1) motion to dismiss should be granted only when it appears *without a doubt* that the plaintiff can prove no set of facts in support of her claims which would entitle her to relief.") (emphasis added) (citing *Home Builders Ass'n of Mississippi, Inc.*, 143 F.3d 1006, 1010 (5th Cir. 1998)) (emphasis added). A fact finder is permitted to criminally convict a person only if the fact finder concludes that the evidence establishes guilt beyond a reasonable doubt. Here, based on *Ramming* and *Bittakis*, the threshold standard is even higher—a 12(b)(1) should only be granted if the evidence established without a doubt that plaintiff cannot prove vessel status. *Id.* See also *Garcia v. Copenhaver, Bell & Assoc.*, 104 F.3d 1256, 1260 (11th Cir. 1997) ("[I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction.").

A district court's denial of an evidentiary hearing is reviewed for abuse of discretion. *In re Eckstein Marine Serv.*, 672 F.3d 310, 319 (5th Cir. 2012). "When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court must give the plaintiff an opportunity to be heard, particularly when disputed factual issues are important to the motion's outcome." *Id.* (citing *Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598, 602 n.1 (5th Cir 1982) and *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981)).

7

## B. The District Court Erred by not Permitting Jurisdictional Discovery

The District Court erred when it dismissed the LOLA under Federal Rule 12(b)(1) by concluding that Grapevine Lake did not qualify as a "navigable waterway" without permitting the parties to conduct jurisdictional discovery, including information and materials from the U.S. Army Corps of Engineers and the Environmental Protection Agency, the latter of which stipulated in a Consent Agreement that Grapevine Lake is a navigable waterway.[3]

"Although conclusive determinations of navigability can be made only by federal Courts, those made by federal agencies are nevertheless accorded substantial weight by the courts. It is therefore necessary that when jurisdictional questions arise, district personnel carefully investigate those waters which may be subject to Federal regulatory jurisdiction under guidelines set out above, as the resulting determination may have substantial impact upon a judicial body." 33 C.F.R. § 329.14(a) (subsection (b) sets forth the procedures for determining whether a body of water is navigable). "[T]he policies and criteria contained in this regulation are in close conformance with the tests used by Federal courts and determinations made under this regulation are considered binding in regard to the activities of the Corps of Engineers." 33 C.F.R. § 329.3. Any "absence from [lists of final determinations

---

[3] As this Court knows, the parties may not conduct any discovery until the parties have met and conferred on a Joint Discovery Case Management Plan.

of navigability] should not be taken as an indication that the waterway is not navigable." 33 C.F.R. § 329.16(b).

"When considering Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court must give the plaintiff an opportunity to be heard, particularly when disputed factual issues are important to the motion's outcome. In some cases, an oral hearing may be indispensable due to the complicated factual disputes underlying the case." *Reese v. Wells Fargo Bank*, NA, No. 3:23-cv-524-N-BN, 2024 U.S. Dist. LEXIS 152771, *8 (N.D. Tex. Aug 5, 2024) (quoting *In re Eckstein,* 672 F.3d at 319); *In re Complaint of Go Rio San Antonio, LLC*, No. SA-20-CV-1304-KJP, 2021 U.S. Dist. LEXIS 109617, *4, 10-11 (W.D. Tex. June 11, 2021) (court granted jurisdictional discovery on the navigability of the San Antonio River and issued ruling on motion to dismiss only *after* the necessary discovery was conducted). An oral hearing may not be necessary only "if the parties receive an adequate opportunity to conduct discovery and otherwise present their arguments and evidence to the court." *In re Eckstein*, 672 F.3d at 319-20.

Here, Deno "at least raise[d] an inference" that jurisdictional discovery is needed when, in footnote 2 of his Response, he stated he had requested information and materials from the EPA under the Freedom of Information Act. (ROA.209, 266).

Deno contends that conducting jurisdictional discovery should provide the opportunity to develop facts sufficient to support subject matter jurisdiction (in

addition to the affirmative expert evidence already presented in response to the various motions to dismiss). Such discovery may include, but is not limited to, depositions by written questions directed to the U.S. Army Corps of Engineers and the EPA (relating to the consent agreement) concerning Grapevine Lake.

The map below, which was filed as Doc. 45-1 in Civil Action No. 3:22-cv-01874-N, *Timpy Ondrusek, et al v. United States Army Corp of Engineers, et al*, recognizes Grapevine Lake as a major water resource in the Upper Trinity River Basin, including the Trinity River.



Grapevine Lake provides flood control and water supply to the Trinity River via the Elm Fork River. Cf *Baltimore Gas & Elec. Co. v. Coastline Commer. Contr., Inc.*, 107 F.4th 264, 269-270 4th Cir. 2024) (reversed district court's dismissal for lack

of jurisdiction and remanded for further proceedings). It is reasonable to expect that additional discovery would produce further evidence of Grapevine Lake's navigability, both historically and today.

Courts have repeatedly held that current use does not determine navigability. To hold that navigability depends on current commercial use would preclude the uniformity and predictability so integral to admiralty law because its application would be "dependent on whether, on any given day, commercial maritime activity is being conducted on the waters." *Price v. Price*, 929 F.2d 131, 134 (4th Cir. 1991); see also *Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Raft of Logs*, 709 F.3d 1055, 1061 (11th Cir. 2013) ("A test that requires evidence of actual or likely commercial activity fails to provide the predictability that encourages maritime commerce."). For this reason, courts have found admiralty jurisdiction even over waters used exclusively for recreational navigation when they were at some time capable of commercial navigation. *E.g., Price*, 929 F.2d at 134-35; *Mullenix v. United States*, 984 F.2d 101, 104 (4th Cir. 1993).

These same principles of uniformity and predictability apply to assessing the depth of navigable waters as well. Courts have thus held that "the boundary of admiralty jurisdiction in tidal areas does not ebb and flow with the tide but extends to the mean high water mark at all times" because it should not matter whether an injury occurred one step into or one step out of the water's edge at a given

moment. *Hassinger v. Tideland Elec. Membership Corp.*, 781 F.2d 1023, 1026-27 (4th Cir. 1986). Indeed, courts have found admiralty jurisdiction over torts taking place on land when they fell within the mean high-water mark of the tide. *E.g., id.*

It is clear that the issue of whether Grapevine Lake is a navigable waterway for purposes of establishing subject matter jurisdiction is a fact-intensive one, requiring detailed analysis of both historical and current information regarding Grapevine Lake's uses. Deno made clear to the District Court that he was attempting to conduct the necessary discovery, via a FOIA request, to obtain documentation that was key to conducting that detailed analysis. At no fault of Deno, but simply because of the delays in processing FOIA requests due to governmental red tape and understaffing issues, the request was not fulfilled before the District Court dismissed his case. The District Court's dismissal was improper, as it should have allowed Deno to conduct jurisdictional discovery before considering a Rule 12(b)(1) motion to dismiss.

### C.   The District Court Erred When It Seemingly Failed to Consider or Improperly Ignored Evidence in Support of Jurisdiction

Though Deno does contend that he should have been allowed to conduct jurisdictional discovery prior to any dismissal, and while that additional discovery would provide additional guidance on the issue of navigability, it is most important to note that Deno produced affirmative evidence in support of jurisdiction despite improperly not being afforded the opportunity to conduct said discovery. And the

District Court improperly ignored that evidence. Specifically, the District Court erred under Rule 12(b)(1) when it failed to consider the sworn testimony of a marine expert who opined that "Grapevine Lake, in its actual and potential uses (past, present and future) is a navigable waterway in fact."

Furthermore, the District Court should have accepted as true Deno's well-pleaded factual allegations, including the reference to the EPA's determination that Grapevine Lake is a navigable waterway as well as the evidence Deno included in his response to the Motions to Dismiss. See also the attached news story from April 29, 2024, a mere 5 ½ months before the incident.[4] There, the U.S. Army Corps of Engineers closed floodgates at Grapevine Lake to prevent its water from flowing into the swollen Trinity River.

### 1.  Evidence Provided Regarding Historical Overview of Grapevine Lake

Grapevine Lake conforms to the four definitions of Navigable Waters found in Title 33, Code of Federal Regulations and in the definition found as 40 CFR § 120.2 and is, therefore, a navigable waterway. ROA.230, 288.

Grapevine Lake was built by the United States Army Corps of Engineers (USACE) for navigation as a necessary precursor to the improvement of the navigability of the Trinity River under Congressional authority pursuant to Public

---

[4]    https://www.wfaa.com/article/news/local/north-texas-lakes-full-trinity-river-high-after-heavy-rain-april29/287-fe3491f4-6927-44b7-be9d-a9c12a7472c4

Law 79-14 *in connection with the exercise of jurisdiction over the rivers of the Nation through the construction of works of improvement, for navigation or flood control, as herein authorized*, and therefore remains a navigable waterway regardless of any eventual non-completion of the Trinity River navigation improvement project. ROA.230, 288.

The Trinity River is a designated navigable waterway into which Grapevine Lake is connected and overflows. ROA.230, 288.

Grapevine Lake is currently managed by USACE pursuant to an extensive list of Federal laws, deriving authority from the Federal jurisdiction of navigable waters. ROA.230, 238.

The current use of Grapevine Lake is for recreational and traditional commercial maritime activities connected to foreign and interstate commerce, such as carrying passengers for hire, sale and repair of vessels, dockage and dry-docking of vessels, charter and rental of vessels, and supply of fuel and provisions. ROA.230, 238.

It is demonstrated by the historical record that the Trinity River and its tributaries have in the past carried foreign and interstate commerce and was capable of being improved for increased navigational use. ROA.230-231, 288-289.

Deno's marine expert opined "that Grapevine Lake, in its actual and potential uses (past, present and future) is a navigable waterway in fact." ROA.231, 289.[5]

Deno has done more than assert a mere legal conclusion that Grapevine Lake is navigable. He included sworn testimony and a report from a certified marine consultant and surveyor attesting to facts which supported the conclusion that Grapevine Lake is navigable and which would overcome the 12(b)(1) jurisdictional challenge, as outlined herein.

## 2. Grapevine Lake is a Navigable Waterway

Grapevine Lake is a navigable waterway according to the definition, among others, of navigable waters. See Title 33 Navigation and Navigable Waters, 33 CFR 329.4, which reads: "Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce.").

"A waterbody which was navigable in its natural or improved state, or which was susceptible of reasonable improvement (as discussed in § 329.8(b) of this part) retains its character as "navigable in law" even though it is not presently used for commerce or is presently incapable of such use because of changed conditions or the presence of obstructions." 33 C.F.R. § 329.9(a).

---

[5] See also the marine expert's report. ROA.232-250, 290-308.

"Navigability may also be found in a waterbody's susceptibility for use in its ordinary condition or by reasonable improvement to transport interstate commerce. This may be either in its natural or improved condition and may thus be existent although there has been no actual use to date. Non-use in the past therefore does not prevent recognition of the potential for future use." 33 C.F.R. § 329.9(b).

The present navigability (or lack of same) of Grapevine Lake does not make it non-navigable for purposes of admiralty jurisdiction. The damming of Grapevine Lake does not render it non-navigable under Title 33 Navigation and Navigable Waters, 33 CFR 329.4. In *Madole v. Johnson*, 241 F. Supp. 379, 382 (E.D. La. May 25, 1965), the federal district court concluded that Lake Hamilton is a navigable waterway, rejecting the denoted present navigability of the lake. There, the Court observed that (a) Lake Hamilton was formed by Carpenter Dam, built across the Ouachita River near Hot Springs, Arkansas; (b) there were three dams on the Ouachita River; and (c) there were no locks or other conveyances available for transporting watercraft around or through any of the dams. *Id.* at 380-381. The court in *Madole* cited to, and relied on, at least two United States Supreme Court cases. *Economy Light & Power Co. v. United States*, 256 U.S. 113, 118 (1921) ("The fact…that artificial obstructions exist…does not prevent the stream from being regarded as navigable in law, if, supposing them to be abated, it be navigable in fact in its natural state."); see also *The Daniel Ball*, 77 U.S. 557, 563 (1870) (holding that

16

Grand River, on which a steamer was engaged solely in interstate commerce between two cities in Michigan, was navigable) (noting that the doctrine of English common law as to navigability of waters has no application this country.) ("A different test must, therefore, be applied to determine the navigability of our rivers, and that is found in their *navigable capacity*." (emphasis added).

Grapevine Lake has navigable capacity in its current, past or future use. See 25 Tex. Regulation (June 16, 2000). ("Adjudication No.08- 2362 authorizes the City of Grapevine to impound 26,250 acre-feet of water in the U.S. Army Corps of Engineer's Grapevine Lake on Denton Creek, tributary of the Elm Fork Trinity River, tributary of the Trinity River, Trinity River Basin, Tarrant County, between elevation 500.5 msl and 535.0 msl.")

Two principal cases on which the District Court relied are fundamentally distinguishable to the facts in this case. For example, in *Guillory v. Outboard Motor Corp.*, 956 F.2d 114, 115 (5th Cir. 1992), vessels could not access Bayou Nezbique because of the dam and, even before construction of the dam, Crooked Creek Reservoir "was so shallow in depth and overgrown by brush that it was difficult, if not impossible, for any vessel to travel across its waters."

Grapevine Lake, on the other hand, has a surface area of approximately 7,280 acres and a maximum water depth of approximately 65 feet and 60 miles of shoreline. ROA.234, 292. The lake supports commercial and recreational activity,

including marinas, vessel sales and service, passenger service, and vessel charter and hire. ROA.234, 292.

In *Hardwick v. Pro-Line Boats*, 895 F. Supp. 145 (S.D. Tex. 1995), the Court addressed the navigability of Lake Houston. However, Lake Houston is fundamentally different than and distinctive to Grapevine Lake. Lake Houston was formed by damming the San Jacinto River. *Id.* at 148. The San Jacinto River is not a navigable waterway. The Trinity River, to which Grapevine Lake is connected, is.

Federal admiralty jurisdiction exists if the subject fire and explosion occurred on navigable waters, and it bore significant relationship to traditional maritime activity. *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1376-77 (5th Cir. 1988). In *Sanders*, the Fifth Circuit Court of Appeals affirmed the district court's finding that "Catahoula Lake is, in fact, a navigable water of the United States, and it follows that as a matter of law, admiralty jurisdiction attaches." 861 F.2d at 1378. "[T]he fact that during certain seasons the access to Catahoula Lake via the Little River weir is non[-]navigable is not determinative of federal admiralty jurisdiction." *Id.* at 1377; see also *Thibodeaux v. Bernhard*, No. 23-30405, 2024 U.S. App. LEXIS 15539, *15-16 (5th Cir. June 26, 2024) (holding that Lost Lake was navigable for, among other things, it had a direct, seasonal connection to a navigable river through a 10-to-20-foot-wide drainage canal).

18

A waterway is navigable if it is used or susceptible to being used as an artery of commerce. *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 19 L. Ed. 999 (1871). If the river was navigable prior to construction of the dam, it continues to be considered as a navigable stream. *George v. Beavark, Inc.*, 402 F.2d 977, 978 (8th Cir. 1968) (citing *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 408, 61 S. Ct. 291, 85 L. Ed. 243 (1940); *Economy Light & Power Co. v. United States*, 256 U.S. 113, 118, 41 S. Ct. 409, 65 L. Ed. 847 (1921).

"A motion under 12(b)(1) should be granted only if it ***appears certain*** that the plaintiff ***cannot prove any set of facts*** in support of his claim that would entitle him to relief." *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (emphasis added). Deno has made a prima facie showing that subject matter jurisdiction exists. See *Sisson v. Ruby*, 497 U.S. 358 (1990) (reversing and remanding for further proceedings after concluding the district court jurisdiction over LOLA proceeding) In *Sisson*, boat owner filed a LOLA after his yacht caught fire while docket at a marina on Lake Michigan, a navigable waterway, and damaged neighbors' vessels. 497 U.S. at 360. There, the Supreme Court iterated: "Clearly, the storage and maintenance of a vessel at a marina on navigable waters is substantially related to 'traditional maritime activity' [and] [d]ocking a vessel at a marina on a navigable waterway is a common, if not indispensable, maritime activity. At such a marina, vessels are stored for an extended period, docked to obtain fuel or supplies,

and moved into and out of navigation. Indeed, most maritime voyages begin and end with the docking of the craft at a marina. We therefore conclude that, just as navigation, storing and maintaining a vessel at a marina on a navigable waterway is substantially related to traditional maritime activity." *Id.* at 367. Further, the Supreme Court stated that "a narrow focus on navigation would not serve the federal policies that underlie our jurisdictional test. The fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce[.]'" *Id.*

A defendant makes a factual attack by providing affidavits, testimony, or other evidentiary materials challenging the jurisdiction of the court. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981) Appellees did not provide affidavits or other sworn testimony that Grapevine Lake is not navigable.

Deno provided an affidavit and detailed report from a marine expert whose qualifications have not been challenged. ROA.230-250, 288-308. Grapevine Lake is a water supply source for the Elm Fork River and the Trinity River in the Trinity River Basin. Trinity River is a navigable waterway into which Grapevine Lake flows or is susceptible to flowing into or sourcing it. *Utah v. United States*, 403 U.S. 9, 10 (1971) (concluding there was sufficient evidence that the Great Salt Lake was navigable even though it is "not part of a navigable interstate or international commercial highway")

 The fire and explosion bear a significant relationship to traditional maritime

activity. At least 10 boats burned. At least one person was injured. The marina sustained significant property damage.

Deno has met his burden that Grapevine Lake is navigable and that subject matter jurisdiction exists. And at the very least, has established the need for additional discovery into a fact-intensive issue central to subject matter jurisdiction, prior to the issuance of a finding that subject matter jurisdiction does not exist.

## CONCLUSION AND REQUEST FOR RELIEF

Deno requests that this Court reverse the District Court's dismissal of the LOLA, render that Grapevine Lake is navigable and that subject matter jurisdiction exists or reverse and remand for further discovery and proceedings.

/s/ William Tracy Freeman
_____
WILLIAM TRACY FREEMAN
Federal Bar No. 19588
Texas Bar No.00793757
Segal McCambridge Singer & Mahoney, Ltd.
100 Congress Avenue, Suite 800
Austin, Texas 78701
Telephone: (512) 476-7834
Email: tfreeman@smsm.com
-and-
HOPE ZIMLICH MIRANDA
Texas Bar No. 24084146
Thompson Coe
700 North Pearl Street
Dallas, Texas 75201
Telephone: (214) 871-8200
Email: hmiranda@thompsoncoe.com
*Attorneys for Appellant Douglas Deno, as Owner of the M/V 1999 Carver 406 Aft Cabin*

## CERTIFICATE OF SERVICE

I certify that on August 1, 2025, the foregoing document was served on today's date to the following parties' counsel:

/s/ William Tracy Freeman

_____

*William Tracy Freeman*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5ᵗʰ CIR. R. 32.1, this document contains 6,196 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5ᵗʰ CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Office 16 in Times New Roman 14-point font.

/s/ William Tracy Freeman

_____

*William Tracy Freeman*